UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WOODS SERVICES, INC.** | : CIVIL ACTION |
| 40 Martin Gross Drive | : |
| Langhorne, PA 19047 | : |
| | : |
| VS. | : NO. |
| | : |
| **HAZLETON AREA** | : |
| **SCHOOL DISTRICT** | : |
| 1515 West 23rd Street | : |
| Hazle Township, PA 18202 | : |

## COMPLAINT

Plaintiff, Woods Services, Inc., by and through its undersigned co-counsel, Fenningham,

Stevens, Dempster & Coval LLP, and Chariton, Schwager & Malak, hereby asserts this

Complaint against the Defendant identified below and, in support thereof, avers as follows:

**I.      PARTIES, JURISDICTION & VENUE**

1.      Plaintiff, Woods Services, Inc. ("Woods"), is a Pennsylvania nonprofit

corporation with its principal place of business located at 40 Martin Gross Drive, Langhorne,

Bucks County, PA 19047.

2.      Woods is a non-profit organization that provides residential, educational and

vocational support services for children and adults with disabilities, including intellectual

disabilities, autism spectrum disorders, developmental disabilities, challenging behaviors,

emotional disturbances, traumatic brain injury and neurological disorders.

3.      Woods is a licensed residential treatment facility, and it also operates an approved

private school on its campus in Langhorne, Pennsylvania.

4.      Defendant, Hazleton Area School District (the "District" or "Defendant"), is a

public body duly organized and existing under the laws of the Commonwealth of Pennsylvania

and located in Hazleton, Pennsylvania. Defendant receives federal financial assistance as a part of its educational programs.

5.      This is a civil action for a declaration approving the special education program and residential care of a disabled child, G.H., (hereinafter "the student") who resides at Woods, and directing Defendant to reimburse Plaintiff for the costs of the student's care and special education program at Woods.

6.      Venue is proper under 28 U.S.C.A. § 1391 because the Defendant resides in this judicial district.

7.      Declaratory relief is sought and authorized pursuant to 28 U.S.C.A. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 57).

8.      Subject matter jurisdiction is conferred by 28 U.S.C.A. § 1331, and also by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), because each claim for relief alleges violations of the student's federal rights under the laws of the United States, namely the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1401 *et seq.* ("IDEA") and also raises issues regarding the use of federal education funds and the administration of federal educational programs for students with disabilities.

## II.   BACKGROUND

### A.   Federal Law

9.      The IDEA is a federal statute that governs state educational agencies that receive federal funds for, among other things, the provision of special education services to "children with disabilities."

10.     The United States Department of Education ("USDOE") administers the IDEA and has promulgated regulations relating to financial assistance to state educational agencies for the education of children with disabilities. *See* 34 C.F.R., Part B, Chapter III, Part 300, §§300.1

2

to 300.818 (2013).

11.     The phrase "child with a disability" is defined under the federal regulations to include, among other things, a child evaluated to have various physical and/or mental disabilities or a specific learning disability or multiple disabilities. *See* 34 C.F.R. § 300.8 ("Child with a disability").

12.     IDEA and the regulations promulgated thereunder are applicable to the Commonwealth of Pennsylvania as a recipient of funding under IDEA and the Defendant as a school district and beneficiary of those funds. *See* 20 U.S.C. §1401 *et seq.*; 34 C.F.R. § 300.2; and 22 Pa. Code §§ 14.101 *et seq.*

13.     The IDEA requires that a state receiving federal education funding must "ensure that all children with disabilities have available to them a *free appropriate public education* ("FAPE") that emphasizes special education *and related services* designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A) (emphasis added); s*ee also* 34 C.F.R. § 300.1 ("Purposes"), 301.17 ("Free Appropriate Public Education").

14.     The FAPE is required for all children with disabilities between the ages of 3 and 21. *See* 20 U.S.C. 1412(a)(1)(A).

15.     School districts provide a FAPE by designing and administering a program of individualized instruction that is set forth in an Individualized Educational Plan (hereinafter "IEP"). 20 U.S.C. § 1414(d).

16.     School districts must ensure that IEPs are individualized and identify the special education and related services based on the individual needs of the child. 34 C.F.R. 300.346– 300.347. And the FAPE is required to be provided to the student "at public expense, under public supervision and direction, and without charge." 34 C.F.R. § 300.17.

17.     Federal regulations implementing the IDEA identify a school district's specific obligations to a student with an existing IEP who transfers from another state or from another school district within the same state. *See* 34 C.F.R. § 300.323(e) and (f).

18.     Under these regulations, the new school district must provide a FAPE that include comparable services to those described in the student's prior IEP until the district conducts an evaluation pursuant to 34 C.F.R. §§ 300.304–300.306 (if the district determines such an evaluation necessary), and develops, adopts, and implements a new IEP, if appropriate, that meets applicable requirements. *See* 34 C.F.R. § 300.323.

**B.      Pennsylvania State Law**

19.     The Pennsylvania Public School Code ("School Code") incorporates by reference various provisions of the IDEA and the USDOE's regulations set forth in Chapter 34 of the Code of Federal Regulations making them applicable to the District and this dispute.  *See* 22 Pa. Code §§ 14.101 *et seq.*

20.     Under the School Code, Pennsylvania school districts are responsible for educating all students, including students with disabilities, who reside within their boundaries. *See Abington Sch. Dist. v. Dep't of Educ.*, 60 A.3d 201, 203 (Pa. Cmwlth. 2013).

21.     A child is considered a resident of the school district in which his parents or the guardian of his person resides. *See* 24 P.S. 13-1302.

22.     The primary responsibility for identifying all children with disabilities and developing educational programs to meet their specific and individualized needs rests with the local school district in which the child is a resident. *See Abington Sch. Dist.,* 60 A.3d at 203.

23.     If it is not feasible for a local school district to provide for a an appropriate program of special education for a particular student, then the district must secure such education and training outside the public schools of the school district or in special institutions. 24 P.S. §

13–1372(3).

24.     One option available to districts is to provide services for students with disabilities in approved private schools (such as Woods) or in chartered schools for the deaf and blind. *See* B.E.C.[1] 24 P.S. §§ 13-1302; 13-1372 (April 2013) (entitled "Student Enrollment in Department-Funded Slots for Services Provided by the Approved Private Schools and Chartered Schools for the Deaf and Blind") (Exhibit "A" hereto).

25.     "Regardless of whether a school district provides educational services to its special education students or secures such education outside of the school district's schools, the school district remains financially responsible for the costs associated with the education of those students." *See Abington Sch. Dist.,* 60 A.3d at 203; citing 24 P.S. § 13–1372(5) and 13–1308.

26.     The financial burden, however, does not necessarily fall entirely on the school district. A district can place a student in an approved private school pursuant to an IEP and receive *partial* funding for the placement from the Pennsylvania Department of Education ("PDE") in what is a referred to as a "Department-Funded Slot" or "4010 Slot." *See* B.E.C. 24 P.S. §§ 13-1302; 13-1372 (Exhibit "A" hereto).

## III.    THE DISTRICT'S VIOLATIONS OF THE IDEA

27.     The student at issue in this case, G.H., was admitted to Woods when he was seven (7) years old.

28.     The student is diagnosed with profound intellectual disability, autism, ADHD, and he has a history of destructive behaviors, impulsivity, delayed language skills, hyperactivity and seizure disorder, which made it not feasible to provide for his education and related services within a regular public school setting.

---

[1] A Basic Education Circular ("B.E.C." or "Circular") provides the Pennsylvania Department of Education's guidance on the implementation of law, regulation and policy.

29.     At the time of the initial placement at Woods, the student's mother lived in the State of New York, and funding was provided by the Warwick Valley Central School District.

30.     Thereafter, the student's mother moved her residence several times and various school districts assumed educational and financial responsibility for GH's placement at Woods over the years, including the Middletown Central School District, Pinebush Central School District, and Minisink Valley School District (all within the State of New York), and then the Bangor Area School District,  Parkland School District, Northwestern Lehigh School District and again the Parkland School District (all within the Commonwealth of Pennsylvania).

31.     The student's mother last move, out of the Parkland School District, established residency in the District sometime before February 1, 2014.

32.     At the time of her move from the Parkland School District, the student was in a PDE approved 4010 slot with the designation as a seven (7) day residential placement.

33.     The Parkland School District notified Woods of the mother's  change in residency and directed Woods to complete and submit a PDE-4011 form "Request For Change In Approved Private School Assignment" identifying the District as the new Local Education Agency ("LEA").

34.     The PDE-4011 form reporting the change in LEA was accepted by the Hazelton Area School District and approved by the Pennsylvania Department of Education with an effective date of February 1, 2014.

35.     The student's exiting IEP from the Parkland School District was initially reviewed and approved by the District on or about February 20, 2014.

36.     Pursuant to the student's existing IEP and the approved 4010 Slot application, the District agreed that the student should continue to be residentially placed at Woods, seven (7) days per week, where he would continue to receive an appropriate program special education and

6

training while residing at Woods' approved private school.

37.    The student's IEP also continued to provide for an Extended School Year ("ESY") program over the summer months of July and August.

38.    The District also agreed to continue providing the student with a one-to-one (1:1) classroom and residential aide (*i.e.*, a specially assigned behavioral support staff/personal care assistant) for fourteen (14) hours per day.

39.    Indeed, on or about February 28, 2014, the District executed a written Agreement with Woods specifically approving the student's one-to-one (1:1) classroom and residential aide for fourteen (14) hours per day. A true and correct copy of this Agreement is attached hereto as Exhibit "B" and incorporated herein.

40.    From February 10, 2014 until June 30, 2014, the District paid Woods in full for the residential and educational costs of the student's placement at Woods, including the full cost of the student's 1:1 classroom and residential aide.

41.    Thereafter, nothing changed regarding G.H.'s placement that would abrogate or alter the District's funding obligations.

42.    At no time did the District ever object to the on-going services being provided to the student nor did the District request any modification or cancelation of these existing services.

43.    The District took no steps to transfer the student at any time.

44.    Nonetheless, after June 30, 2014, the District failed and refused to pay for the student's 1:1 aide service.

45.    The District also failed and refused to pay for the student's ESY instruction and residential care at Woods in July and August 2014 and July and August 2015.

46.    Although it had the ability to do so, the District took no steps to remove the student from placement at Woods, to re-evaluate the student's needs, and/or to revise the

7

student's individualized services.

47.     Although it had the ability to do so, the District took no steps to apply for additional funding for this student from PDE's "Special Education Contingency Funds."

48.     Had it been requested by the District, these supplemental state funds would have been available to assist the District in funding the student's services, including the student's required 1:1 aide service.

49.     Nonetheless, the District specifically requested and allowed Woods to continue providing the student with a 1:1 aide and ESY programming, knowing that the District was obligated to pay Woods for these costs.

50.     Woods invoiced the District on monthly basis, and the District did not object to these charges or the level of service.

51.     Nonetheless, the District has failed and refused to fund this student's program of special education and residential care.

52.     At all times relevant hereto, under the IDEA, 20 U.S.C.A. §§ 1400 et seq., the District had the legal responsibility to provide and fund the student's 1:1 aide and ESY program — both the residential and educational costs.

53.     Indeed, the District re-approved the student's IEP, providing for both ESY programming and 1:1 aide services, on or about February 11, 2015.

54.     Woods invoiced the District a total of $226,450.80 for these services. A true and correct statement of account is attached hereto as Exhibit "C" and incorporated herein.

55.     The rates charged by Woods are annually reviewed and approved by the Bucks County Department of Mental Health / Developmental Programs and published by PDE in its Directory of Approved Private Schools. Woods' rates are reasonable and customary in the industry.

8

56.     Woods has fulfilled the District's legal obligations to provide special education services to the student under state and federal law, and the District, as a matter of law and equity, must pay for these services.

## COUNT I
### (Declaratory Judgment)

57.     Woods incorporates the foregoing averments herein as if fully set forth at length.

58.     The District has taken the position that it is not required to fund the student's 1:1 aide and ESY services provided at Woods' approved private school, despite their inclusion on the student's IEP, and despite the clear mandates of the IDEA and implementing regulations.

59.     As a result of the foregoing, there is now existing between the parties an actual or justiciable controversy or, in the alternative, an actual or justiciable controversy is imminent, and Woods is entitled to have a declaration of its rights because of the facts, conditions, and circumstances set forth herein above.

60.     Woods seeks a declaration from this Court, under the law and applicable regulations cited hereinabove, concerning the District's obligations with respect to the student who is placed at Woods' approved private school and received the special educational services at this facility consistent with his IEP as approved by the District.

61.     There is no administrative process available for Woods, as the approved private school, which can provide the needed declaratory relief. *See* 20 U.S.C. § 1415(1) (describing the administrative procedural safeguards, rights and remedies available to students, their parents, and the local school districts). This controversy, therefore, is ripe for adjudication.

WHEREFORE, Plaintiff, Woods, without limitation of the foregoing, seeks a declaration that:

a.     The District is responsible under the IDEA, to provide a free and appropriate education to the student, including the student's 1:1 aide and ESY services;

b.     The District is responsible to pay Woods' invoices in the amount of $226,450.80 for services provided to the student; and

c.     Such other relief as this Honorable Court deems just.

## COUNT II
### (Breach of Contract)

62.     Woods incorporates the foregoing averments herein as if fully set forth at length.

63.     As described above, the District breached its contract with Woods by failing to fund the student's 1:1 aide and ESY services.

64.     Woods has complied with all conditions precedent to recovery.

WHEREFORE, Plaintiff, Woods, hereby demands judgment in its favor and against Defendant, the District, in the amount of $226,450.80 together with pre-judgment interest, post-judgment interest, all costs, and any such further relief as this Honorable Court deems just and equitable.

## Count III
### (Equitable Estoppel)

65.     Woods incorporates the foregoing averments herein as if fully set forth at length.

66.     Allowing the District to avoid payment to Woods for the education services that it undeniably provided to the student would result in fundamental injustice.

67.     The District misled and induced Woods into a reasonable belief that the District would pay Woods in full by: (a) approving and requiring that Woods provide 1:1 aide and ESY services to the student on the IEPs; (b) never objecting to the educational and residential services provided by Woods; (c) never making alternative educational or residential arrangements for the student or requesting modification/cancelation of on-going services, and (d) failing to assert any

10

legal or equitable impediment to the payment of any of Woods' invoices prior to services having been delivered to the student.

68.     Woods reasonably relied upon the District's statements, conduct, and silence in continuing to provide educational services to the student while placed at Woods.

69.     The District knowingly permitted and continue to permit Woods to discharge its obligations to provide the mandatory education of one of its students placed at Woods.

70.     Moreover, the District violated the federal IDEA, by failing to fund the student's 1:1 aide and ESY services, which were mandated by the student's IEP.

WHEREFORE, Plaintiff, Woods, hereby demands judgment in its favor and against Defendant, the District, in the amount of $226,450.80 together with pre-judgment interest, post-judgment interest, all costs, and any such further relief as this Honorable Court deems just and equitable.

### COUNT IV (in the alternative)
### (Unjust Enrichment)

71.     Woods incorporates the foregoing averments herein as if fully set forth at length.

72.     The District has been unjustly enriched by receiving the benefit of Woods' educational services without making fair, customary, and reasonable payment for the educational services rendered by Woods.

73.     But for the educational and residential services provided by Woods, the District would have had to educate the student using its own facilities or by contracting with others.

74.     Defendant knowingly permitted Plaintiff to discharge the District's obligations for the care and education of the student.

75.     Defendant has failed and refused to pay the fair and reasonable value of the services rendered by Plaintiff, but has benefited from and retained the value of same.

11

76.     Defendant, therefore, to date, has been unjustly enriched at the expense of Plaintiff in the amount of $226,450.80, which represents the fair and reasonable value of the services rendered by Woods as of the date of this Complaint.

WHEREFORE, Plaintiff, Woods, hereby demands judgment in its favor and against Defendant, the District, in the amount of $226,450.80 together with pre-judgment interest, post-judgment interest, all costs, and any such further relief as this Honorable Court deems just and equitable.

## COUNT V
### (Account Stated)

77.     Woods incorporates the foregoing averments herein as if fully set forth at length.

78.     Woods has issued invoices for services rendered to the District for payment.

79.     The charges set forth in the invoices are reasonable and those the parties agreed to pay for the services rendered.

80.     The charges set forth in Woods' invoices are based on rates that are annually reviewed and approved by the Bucks County Department of Mental Health / Developmental Programs and published by PDE in its Directory of Approved Private Schools.

81.     A statement of account or statements of account showing the amounts due for the services rendered have been received by the District.

82.     The District has not objected to the amounts set forth on the statements of account or in the underlying invoices supplied to the District by Woods.

83.     Despite repeated demand, the District has failed or refused to pay the sums rightfully due and owing to Woods.

WHEREFORE, Plaintiff, Woods, hereby demands judgment in its favor and against Defendant, the District, in the amount of $226,450.80 together with pre-judgment interest, post-

judgment interest, all costs, and any such further relief as this Honorable Court deems just and equitable.

FENNINGHAM, STEVENS
DEMPSTER & COVAL LLP

Dated: 12-22-15          By: _____

Christopher P. Coval, Esquire
Attorney I.D. #93688
Five Neshaminy Interplex, Suite 315
Trevose, PA 19053
215-659-2600
ccoval@fsdc-law.com

*Co-Counsel for Plaintiff, Woods Services, Inc.*

CHARITON, SCHWAGER & MALAK

Dated:
12-22-15          By: _____

Jeffrey J. Malak, Esquire
Attorney I.D. #86071
138 South Main Street, P.O. Box 910
Wilkes-Barre, PA 18703-0910
jjm@csmlawoffices.com

*Co-Counsel for Plaintiff, Woods Services, Inc.*