**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WOODS SERVICES, INC.

    Plaintiff,

        v.

HAZLETON AREA SCHOOL DISTRICT,

    Defendant.

CIVIL ACTION NO. 3:15-CV-02464

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is a Motion to Dismiss Plaintiff's Complaint filed by Defendant Hazleton Area School District. (Doc. 7.) Plaintiff, Woods Services, Inc., claims that Defendant is obligated to reimburse it for educational and residential services that it rendered to a third party who qualifies as a "child with a disability" under the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2010). In its Complaint (Doc. 1), Plaintiff asserts state-law claims seeking money damages for breach of contract, equitable estoppel, unjust enrichment, and account stated. Additionally, Plaintiff requests declaratory relief in the form of a declaration concerning the Defendant's obligations under the IDEA, specifically, whether Defendant is responsible to pay Plaintiff for the services Plaintiff has provided to the child.

Plaintiff filed the instant suit in federal court based on subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Because Plaintiff does not have standing to sue under the IDEA, and because its cause of action does not otherwise arise under federal law, the Court finds that it lacks subject matter jurisdiction over this case. Defendant's Motion to Dismiss Plaintiff's Complaint will therefore be GRANTED.

## I. Background

**A. The Individuals with Disabilities Education Improvement Act of 2004 and Related Pennsylvania Law**

The Individuals with Disabilities Education Improvement Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq.* (2010), requires any state or local educational institution receiving federal funding to ensure that all children with disabilities between the ages of three and twenty-one "have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Id.* § 1400(d)(1)(A). Because Pennsylvania receives federal education funding, it is subject to the requirements of the IDEA. *See* § 1412(a)(1); 34 C.F.R. § 300.2 (2006); *Blunt v. Lower Merion Sch. Dist.*, 559 F. Supp. 2d 548, 557 (E.D. Pa. 2008). Pennsylvania school districts provide covered children with a FAPE by designing and implementing an individualized instruction program that is set forth in an Individualized Educational Plan ("IEP"). 20 U.S.C. § 1414(d); *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir. 2015) (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009)). The IEP must be developed and revised to meet the needs of the particular child, 34 C.F.R. § 300.320(a), and, as its name would indicate, the FAPE must be provided to the student at entirely the public's expense. *Id.* § 300.17. Federal regulations require a covered student who transfers to a new school district to continue to receive a FAPE that includes comparable services as those prescribed in the child's previous IEP until the new district adopts the previous IEP or develops and implements a new IEP. *See id.* §§ 300.323(e)-(f).

Under Pennsylvania law, school districts are responsible for educating all students, including disabled students, residing within their boundaries. *See Abington Sch. Dist. v. Dep't of Educ.*, 60 A.3d 201, 203 (Pa. Commw. Ct. 2013) (citing 24 Pa. Cons. Stat. §§ 13-1302, 1372 (2010)). A child is a resident of the school district in which his parents reside. 24 Pa. Cons. Stat. § 13-1302(a) (2010). If the school district is unable

to provide an appropriate program of special education for a given special needs student, the district must secure such education outside of the public school system, which may include placing a student in an approved private school. *See id.* §§ 13-1302, 1372(3); (Basic Education Circular 1, Compl. Ex. A, Doc. 1-2.) Regardless of whether a school district provides the requisite educational services to its special needs students itself or if it secures such services outside of the public school system, the "district remains financially responsible for the costs associated with the education of those students." *Abington Sch. Dist.*, 60 A.3d at 203 (citing 24 Pa. Cons. Stat. § 13-1372(5)). But if a school district places a child in a private school pursuant to that child's IEP, the district may receive partial funding from the Pennsylvania Department of Education ("PDE") in what is referred to as a "4010 Slot" if, *inter alia*, such a slot is available. *See* 24 Pa. Cons. Stat. §§ 13-1376, 1376.1; (Basic Education Circular 1-2, Compl. Ex. A.)

## B. Factual and Procedural Background

Plaintiff, Woods Services, Inc. ("Woods"), is a Pennsylvania nonprofit corporation that provides residential, educational, and vocational support services for both children and adults with disabilities. (Compl. ¶¶ 1-2, Doc. 1.) The present dispute concerns a child named G.H., a student placed at Woods who is diagnosed with autism and other intellectual disabilities. (*Id.* ¶¶ 27-28.) Due to G.H.'s disabilities, it is not feasible for him to receive his educational and related services within a standard public school setting, and he was therefore placed at Woods when he was seven years old.[1] (*Id.*) At the time of his initial placement, G.H.'s mother lived in New York, and funding for G.H.'s placement was provided by the Warwick Valley Central School District. (*Id.* ¶ 29.) Subsequently, G.H.'s mother moved her residence multiple times, resulting in various

---

[1] As of 2014, G.H. was nineteen years old and in twelfth grade having spent the last twelve years at Woods. (Pl.'s Br. in Opp'n 2 n.1, Doc. 11.)

school districts within the states of New York and Pennsylvania assuming educational and financial responsibility for G.H.'s placement at Woods. (*Id.* ¶ 30.) The mother last moved out of the Parkland School District in Allentown, PA and established her residency within the Hazleton Area School District ("Defendant" or the "District") sometime before February 1, 2014. (*Id.* ¶ 31.)

At the time that G.H.'s mother moved to the Hazleton area, G.H. was in a PDE-approved 4010 slot at Woods with the designation of a seven-day residential placement. (*Id.* ¶ 32.) G.H.'s existing IEP from the Parkland School District was reviewed and approved by the Defendant District on or about February 20, 2014. (*Id.* ¶ 35.) Pursuant to this approved IEP, the District agreed to continue to: (1) residentially place G.H. at Woods for seven days a week where he would receive appropriate education and training; (2) provide for an Extended School Year ("ESY") program over the summer months of July and August; and (3) provide G.H. with a one-to-one classroom and residential aide for fourteen hours per day. (*Id.* ¶¶ 36-38.) In furtherance of the latter provision, the District and Woods entered into a written agreement on February 28, 2014, specifically approving Woods's provision of one-to-one aide to G.H. for fourteen hours per day. (*Id.* ¶ 39; *id.* Ex. B.) On its face, the document states that the agreement covered the period of February 10, 2014 to June 30, 2014. (*Id.* Ex. B ¶ 2.) Woods admits that the District paid the school in full for all of the services Woods provided to G.H. up until June 30, 2014. (*Id.* ¶¶ 40-43.)

However, after June 30, 2014, the District failed to pay Woods for the one-to-one aide services provided to G.H. and the ESY instruction and care in July and August 2014 and July and August 2015. (*Id.* ¶¶ 44-45.) The District re-approved G.H.'s IEP on or about February 11, 2015, which continued to call for both an ESY program and one-to-one aide services (*id.* ¶ 53), but the District never paid Woods for either of these

4

services. (*Id.* ¶¶ 44-45; *id.* Ex. C, Doc. 1-4.)  During this time, Woods invoiced the District on a monthly basis, and the District never objected to the services or charges. (*Id.* ¶ 50.) In total, Woods invoiced the District $226,450.80 for the one-to-one aide services and the ESY programming it provided G.H. between July 31, 2014 and August 31, 2015. (*Id.* ¶ 54; *id.* Ex. C.) Woods claims that the District violated the IDEA by failing to compensate Woods for these services (*id.* ¶ 56)*,* and asserts state-law claims seeking relief for the monies owed as well as a declaratory judgment concerning the District's obligation to pay. (*Id.* Counts I-V.)

On February 19, 2016, the District filed the instant Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 7.) The District argues that, contrary to the contentions in Woods's Complaint, the Court does not have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331. (Def.'s Br. in Supp. 4-5, Doc. 9.) In the alternative, the District contends that Woods has failed to state a claim upon which relief can be granted. (*Id.* at 5-11.)

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a party may bring a motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994). "On a motion to dismiss for lack of subject matter jurisdiction, the plaintiff ordinarily bears the burden of persuasion that jurisdiction exists." *Trostle v. Ctrs. for Medicare & Medicaid Servs.*, 2016 WL 6082131, at *2 (M.D. Pa. Oct. 17, 2016) (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

5

A defendant may challenge the existence of subject matter jurisdiction in two fashions. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When a defendant attacks the complaint as deficient on its face, the Court must assume that the allegations contained in the complaint are true. *See id.* In deciding a Rule 12(b)(1) facial attack, the court may consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and "undisputably authentic" documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss. *Hunter v. United States*, 2000 WL 1880257, at *3 (M.D. Pa. Dec.15, 2000); *see Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993). When the motion to dismiss attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to the allegations included in the plaintiff's complaint. *Mortensen*, 549 F.2d at 891. Consequently, the Court may weigh all of the available evidence to satisfy itself that subject matter jurisdiction indeed exists. *Id.*

A motion to dismiss for lack of standing "is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas—St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir.2000)). "On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v. Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir.1996)).

In the instant case, the District's 12(b)(1) motion to dismiss is grounded on the premise that the allegations in Woods's Complaint are insufficient on their face to invoke

6

federal-question jurisdiction. Accordingly, the Court will treat the motion as a facial attack.

### IV. Discussion

On December 22, 2015, Woods filed its Complaint in this Court asserting state-law claims for breach of contract, equitable estoppel, unjust enrichment, and account stated. (Compl. Counts II-V, Doc 1.) Additionally, Woods seeks declaratory relief under the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, requesting the Court to declare that the District is responsible under the IDEA to pay Woods for the unpaid services it rendered to G.H. (*Id.* ¶ 61.) Woods asserts that federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 (federal-question jurisdiction) and the DJA "because each claim for relief alleges violations of the student's federal rights under . . . the [IDEA] and also raises issues regarding the use of federal education funds and the administration of federal educational programs for students with disabilities." (*Id.* ¶ 8.) In its supporting briefs, the District argues, *inter alia*, that: (1) Woods does not have a private right of action under the IDEA and therefore lacks standing to sue under the statute; and, consequently, (2) the Court lacks subject matter jurisdiction over the case because it does not arise under federal law. (*See* Def.'s Br. in Supp. 4-5, Doc. 9; Def.'s Reply Br. 1-2, Doc. 12.) Woods counters the District's Rule 12(b)(1) Motion on the grounds that federal-question jurisdiction lies because the case involves substantial issues of federal law and because Woods seeks a declaratory judgment with respect to the parties' obligations under the IDEA. (Pl.'s Br. in Opp'n 6-8, Doc. 11.) The District's Motion to Dismiss is now ripe for disposition.

After reviewing the parties' briefs, the Court concludes that Woods lacks standing to sue under the IDEA directly and the case does not otherwise arise under federal law.

Accordingly, for the reasons stated below, Woods's Complaint will be dismissed with prejudice.

**A.     The Court Does Not Have Subject Matter Jurisdiction over This Case**

In order to invoke subject matter jurisdiction under 28 U.S.C. § 1331, a plaintiff must satisfy the well-pleaded complaint rule–that is, a federal question must be clear from the face of the complaint. *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908). Under the jurisdictional statute, a case arises under federal law if: (1) federal law creates the cause of action that is asserted; or (2) the asserted state-law claims require resolution of a substantial question under federal law. *See Goldman v. Citigroup Global Markets, Inc.*, __F.3d__, 2016 WL 4434401, at *4 (3d Cir. Aug. 22, 2016) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). In assessing whether a plaintiff's state-law claims "arise under" federal law for purposes of § 1331, the Court applies a four-pronged test first outlined by the Supreme Court in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*. 545 U.S. 308, 314 (2005). Under the test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Goldman*, 2016 WL 4434401, at *4 (quoting *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013)). Courts also consider "the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 318 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)). Ultimately, for federal-question jurisdiction to lie, "'a well-pleaded complaint [must] establish[] either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27-28 (1983).

### 1. Plaintiff Does Not Have Standing to Sue Under the IDEA

The District argues correctly that Woods–as a nonprofit corporation–does not have a private right of action under the IDEA and therefore does not have standing to bring a coercive claim under the statute directly. In *Lawrence Township Board of Education v. New Jersey* ("*Lawrence*"), the Third Circuit concluded that Congress intended the IDEA to provide a private right of action "only to disabled children and their parents." 417 F.3d 368, 371 (3d Cir. 2005). The court noted that a "budgetary dispute between local and state agencies is simply not among the private actions contemplated by the IDEA, and is traditionally the type of dispute left to state and local authorities." *Id.* Accordingly, because the court concluded that Congress did not intend to provide for a private right of action "in favor of a county, educational agency or any other entity," it held that no party may bring a coercive claim under the IDEA other than a covered student or his parents. *Id.* at 372 (quoting *Cty. of Westchester v. New York*, 286 F.3d 150, 152 (2d Cir. 2002)); *see, e.g.*, *Jones v. Camden City Bd. of Educ.*, 499 Fed. Appx. 127, 129 (3d Cir. 2012) (affirming decision finding a substitute teacher lacked standing to sue under the IDEA).

In the instant matter, Woods clearly lacks standing to sue under the IDEA. As a nonprofit corporation, Woods does not qualify as a member of either of the two classes of individuals permitted to sue under the statute. Woods's Complaint does not even attempt to assert a coercive claim under the IDEA. Instead, Woods attempts to circumvent the fact that it lacks standing to sue under the statute directly by requesting a declaratory judgment that declares the District is responsible under the IDEA for paying

the outstanding invoices. (Compl. ¶ 61.) But there is no persuasive justification in the Complaint for why Woods has, or should have, a private right of action under the IDEA in light of the Third Circuit's decision in *Lawrence*. Consequently, because Woods has not and cannot file a coercive claim under the IDEA, federal law does not "create" the cause of action that Woods asserts. If federal-question jurisdiction is to lie, it must be based on alternative grounds.

**2. Plaintiff's Request for a Declaratory Judgment Does Not Provide an Independent Basis for Federal Subject Matter Jurisdiction**

Woods attempts to distinguish this case from *Lawrence* by arguing that, unlike the plaintiff in *Lawrence*, Woods seeks a declaratory judgment pursuant to the federal DJA concerning duties arising from the IDEA. (Pl.'s Br. in Opp'n 7, Doc. 11.) Ostensibly, because Woods requests declaratory relief concerning the parties' obligations under a federal statute, the Court has subject matter jurisdiction over this matter under § 1331. (*See* Compl. ¶ 8, Doc. 1; Pl.'s Br. in Opp'n 7.) The Court disagrees.

In enacting the federal DJA, 28 U.S.C. § 2201, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The DJA authorizes a federal court to issue a declaratory judgment "[i]n a case of actual controversy *within its jurisdiction*." *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 277 n.4 (3d Cir. 2007) (quoting 28 U.S.C. § 2201) (emphasis in original). "It is well-settled that the Declaratory Judgement Act cannot serve as an independent basis for federal subject matter jurisdiction." *Mich. S. R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 575 (6th Cir. 2002) (citing *Skelly Oil Co.*, 339 U.S. at 671); *see Ragoni v. United States*, 424 F.2d 261, 264 (3d Cir. 1970). Rather, the well-pleaded complaint rule

applies with equal force to requests for declaratory judgments. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9-10 (1983). As such, courts have concluded generally that an action seeking a declaratory judgment may "invoke federal question jurisdiction only if the coercive action that would have been brought (were declaratory judgments not available) would have been within that jurisdiction." 13D CHARLES ALAN WRIGHT & ARTHUR MILLER ET AL., FEDERAL PRACTICE & PROCEDURE § 3566 (3d ed. 2016); *see Franchise Tax Bd. of State of Cal.*, 463 U.S. at 18-19. An action for a declaratory judgment may therefore invoke federal subject matter jurisdiction under § 1331 only if it is clear from a plaintiff's well-pleaded complaint that the underlying coercive action that would have been brought absent the DJA would have invoked federal-question jurisdiction. *See* 13D WRIGHT & MILLER ET AL., *supra*, § 3566; *see also Mich. S. R.R. Co.*, 287 F.3d at 575 ("[A] plaintiff cannot circumvent the well-pleaded complaint rule by seeking a declaratory judgment that a federal law is unconstitutional or inapplicable if the complaint itself would not otherwise state a federal question.").

Woods, however, cannot bring a coercive claim under the federal statute for which it seeks declaratory relief. As explained above, the Third Circuit has made clear that the only parties who may bring suit under the IDEA are the disabled children covered by the statute and their parents. *See Lawrence*, 417 F.3d 368, 371 (3d Cir. 2005); *Jones v. Camden City Bd. of Educ.*, 499 Fed. Appx. 127, 129 (3d Cir. 2012). Although Woods enumerates the dictates of the IDEA in support of its case, as a nonprofit corporation Woods lacks standing to file a coercive claim under the federal statute. *See Lawrence*, 417 F.3d at 372 (noting specifically that Congress did not provide a private right of action under the IDEA "in favor of a county, educational agency, *or any other entity*") (emphasis added); *see also Nicodemus v. Union Pac.*

11

*Corp.*, 318 F.3d 1231, 1239 (10th Cir. 2003) (holding that because plaintiffs could not bring a coercive action under the relevant federal statutes, their request for a declaratory judgment establishing the scope of rights under those statutes did not confer federal-question jurisdiction upon the district court); *United Food & Commercial Workers Union, Local 1564 of N.M. v. Albertson's, Inc.*, 207 F.3d 1193, 1197 (10th Cir. 2000) (concluding that if the plaintiff lacks the capacity to bring a coercive action under the relevant federal statute, "the Declaratory Judgment Act cannot confer that capacity upon it"). Woods cannot manipulate a request for declaratory relief into an independent basis for federal-question jurisdiction. *See Mich. S. R.R. Co.,* 287 F.3d at 575.

In sum, Woods cannot invoke federal-question jurisdiction on the ground that the IDEA creates the cause of action that it asserts because it lacks standing to sue under the statute. Additionally, Woods cannot rely on its request for a declaratory judgment as an independent basis for invoking federal-question jurisdiction unless its underlying coercive claims would have invoked federal jurisdiction irrespective of the DJA. Because the remaining claims in Woods's Complaint are based exclusively on state law, Woods must prove that this case falls into that "special and small category of cases in which arising under jurisdiction still lies" in order for federal-question jurisdiction to exist. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013).

### 3.     **Plaintiff's Complaint Does Not Invoke *Grable* Jurisdiction**

Woods argues that federal subject matter jurisdiction does exist pursuant to the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), because its state-law claims[2] implicate significant

---

[2]     Woods's state-law claims are for breach of contract, equitable estoppel, unjust enrichment, and account stated. (Compl. Counts II-V, Doc. 1.)

12

federal issues and involve substantial issues of federal law. (Pl.'s Br. in Opp'n 6-7, Doc. 11.) Specifically, Woods asserts that federal jurisdiction lies because this case turns on "the District's duties and obligations to a student to pay for educational services provided by a third-party and mandated under IDEA. . . ." (*Id.* at 7.) The District contends that this case concerns only the payment of invoices and that no section of the IDEA to which Woods cites governs such a dispute. (Def.'s Reply Br. 2, Doc. 12.) As such, the District argues that Woods has failed to demonstrate how this matter arises under the IDEA. (*Id.*) The Court concludes that Woods's state-law claims do not arise under federal law.

"For statutory purposes, a case can 'aris[e] under' federal law in two ways": (1) federal law creates the cause of action asserted, or (2) where a claim finds its origins in state rather than federal law, it nevertheless falls into a "'special and small category' of cases in which arising under jurisdiction still lies." *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (citations omitted). A state-law claim falls into the "special and small category" if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)*; see Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) ("Only a 'slim category' of cases satisfy the *Grable* test.") (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)). Breaking the inquiry down into discrete components, a federal court will have federal-question jurisdiction over a Plaintiff's state-law claims if "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. In assessing the fourth requirement, courts must consider "the absence of a federal private right of action as evidence relevant to, but not dispositive of,

13

the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 318 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 810 (1986)). Federal-question jurisdiction may be founded upon *Grable*'s "arising under" doctrine only if all four requirements are satisfied. *See Gunn*, 133 S. Ct. at 1065.

### a. Substantiality

Because all four *Grable* requirements must be met for jurisdiction to lie, the Court will address only the "substantiality" component because the federal issue in this case is not substantial in the relevant sense, and the Court's inquiry thus need not proceed any further. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 133 S. Ct. at 166; *see MHA LLC v. HealthFirst, Inc.*, 629 Fed. Appx. 409, 413 (3d Cir. 2015) ("[F]or a case to involve a 'substantial' federal issue, it must be one significant 'to the federal system' as opposed to only the parties." (citation omitted)). That is, the federal issue must usually present a "'nearly pure issue of law' that would govern numerous other cases," not one that is merely "'fact-bound and situation-specific.'" *MHA LLC*, 629 Fed. Appx. at 413 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)). Satisfying the "substantiality" component requires the proponent of federal jurisdiction to demonstrate that there is an "unusually strong federal interest" that necessitates adjudication in a federal forum. *Id.* at 414. *Compare Grable & Sons Metal Prods., Inc.*, 545 U.S. at 315 (finding substantiality to be satisfied when the federal issue was whether the federal government had access to "a federal forum to vindicate its own administrative action"), *and Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 201-02 (1921) (finding federal jurisdiction to be warranted when a judicial determination about the constitutionality of a congressional act was required), *with Gunn*, 133 S. Ct. at 1066-67 (concluding that a

legal malpractice claim that would not undermine the uniform body of patent law was not substantial), *and MHA LLC*, 629 Fed. Appx. at 414 (concluding that a dispute over reimbursement for services provided to Medicare and Medicaid enrollees did not present a substantial federal issue, despite the fact that the case likely involved application of a federal law to the parties' dispute). *See generally MHA LLC*, 629 Fed. Appx. at 413 n.6 ("The prototypical case of *Grable* jurisdiction is one in which the federal government itself seeks access to a federal forum, an action of the federal government must be adjudicated, or where the validity of a federal statute is in question.").

In the instant matter, such substantiality is lacking. The federal issue that is lurking in this case does not concern whether the federal government will have access to a federal forum, risk the uniform development of a body of federal law, or place the constitutionality of a congressional act in question. *Cf. Gunn*, 133 S. Ct. at 1066-67; *see also MHA LLC*, 629 Fed. Appx. at 414 (noting that, when a "suit does not call into question the validity of a federal statute or the conduct of a federal actor," the case is unlikely to raise a substantial federal issue under *Grable*) (citations omitted). Rather, this case is premised on whether one party is required to pay another party for services that it rendered. Although the IDEA might assist a court in deciding which party is responsible in this dispute, nothing suggests that "the federal system as a whole" is to be affected by the outcome of this case. *See MHA LLC*, 629 Fed. Appx. at 415 n.7 (finding the fact that a federal regulatory scheme would need to be consulted in order to resolve a dispute based on state-law claims insufficient to make a federal issue "substantial" under *Grable*). Whether the case ultimately sounds in law or equity, it is simply a suit for monies owed based on services provided. Such matters do not satisfy the "substantiality" requirement necessary to invoke *Grable* federal-question jurisdiction.

15

Additionally, the Court is mindful that permitting Woods to bring suit in federal court could serve to disrupt the "congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. As the *Grable* Court explained, the absence of a federal cause of action in favor of a particular party evidences that Congress did not intend to grant that party access to the federal courts under the statute in question. *See id.* at 318. The fact that the Third Circuit determined that Congress did not intend for parties such as Woods to have a cause of action under the IDEA strongly suggests that this Court should be cautious in finding federal-question jurisdiction under *Grable* simply because the party invokes the IDEA in its complaint. *See Lawrence*, 417 F.3d 368, 371 (3d Cir. 2005). Furthermore, the fact that the merits of the present case center on a contract dispute and the principles of unjust enrichment–matters that are of state concern traditionally–further counsel this Court to conclude that this case should be adjudicated in state court. *See Goldman v. Citigroup Global Markets Inc.*, __ F.3d __, 2016 WL 4434401, at *11 (3d Cir. Aug. 22, 2016) ("Expanding federal question jurisdiction to contractual disputes like this one runs the risk of 'disturbing [the] congressionally approved balance of federal and state judicial responsibilities.'" (quoting *Grable*, 545 U.S. at 314)); *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1238 (10th Cir. 2003) ("We hesitate to exercise jurisdiction where the cause of action is a subject traditionally relegated to state law.") (citation omitted).

Finally, it is worth noting that neither party identifies an actual dispute over the meaning of a particular provision of the IDEA. Instead, this case appears to involve a controversy over the application of the IDEA to the parties' situation. *See MHA LLC*, 629 Fed. Appx. at 414. The Court has not been presented with a disputed legal issue, the resolution of which would be controlling in numerous future cases. This is a situation-specific controversy.

### III. Conclusion

For the above stated reasons, the Court concludes that it lacks subject matter jurisdiction over this case. Defendant's Motion to Dismiss Plaintiff's Complaint will therefore be GRANTED. Because the Court concludes that allowing Plaintiff to amend its Complaint would be futile, Plaintiff's Complaint will be DISMISSED with prejudice. Plaintiff is of course free to pursue its claims in state court.

An appropriate order follows.


October 25, 2016                                                        /s/ A. Richard Caputo  
Date                                                                   A. Richard Caputo  
                                                                         United States District Judge